## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **BRUCE EDWARD BINGHAM, JR.,** | § | |
| **PETITIONER,** | § | |
| | § | |
| **V.** | § | **CIVIL NO. 3:19-CV-2716-L-BK** |
| | § | |
| | § | |
| **DIRECTOR, TEXAS DEPARTMENT OF** | § | |
| **CRIMINAL JUSTICE, CORRECTIONAL** | § | |
| **INSTITUTIONS DIVISION,** | § | |
| **RESPONDENT.** | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, Bruce Edward Bingham Jr.'s

petition for habeas corpus under 28 U.S.C. § 2254 was referred to the United States magistrate

judge for case management, including the issuance of findings and a recommended disposition

where appropriate. As detailed herein, the petition should be **DENIED**, and this case should be

**DISMISSED WITH PREJUDICE**.

## I.   BACKGROUND

On May 12, 2017, a Rockwall County jury convicted Bingham of intoxication

manslaughter and sentenced him to a 60-year term of imprisonment. *The State of Texas v. Bruce*

*Edward Bingham, Jr.*, 2-16-057 (439th Jud. Dist. Ct., Rockwall Cty., Tex., May 12, 2017); Doc.

3 at 2. The Texas Court of Appeals for the Fifth District affirmed the trial court's judgment.

*Bingham v. State*, No. 05-17-00641-CR, 2018 WL 564006 (Tex. App.—Dallas, 2018, pet. ref'd).

Bingham subsequently sought state habeas relief. Doc. 3 at 3-4. The Texas Court of

Criminal Appeals denied Bingham's habeas application without written order on August 7, 2019. *Ex parte Bingham*, No. WR-90,090-01, (Tex. Crim. App. Aug. 9, 2019); Doc. 3 at 4.

On November 14, 2019, Bingham filed this *pro se* habeas petition, alleging prosecutorial misconduct and ineffective assistance of counsel. Doc. 3 at 6-7.

## II.    FEDERAL HABEAS CORPUS PROCEEDINGS

The role of federal courts in reviewing habeas corpus petitions by prisoners in state custody is exceedingly narrow. When reviewing state proceedings, a federal court does not sit as super state appellate court. *Dillard v. Blackburn*, 780 F.2d 509, 513 (5th Cir. 1986). A person seeking federal habeas corpus review must assert a violation of a federal constitutional right. *Lowery v. Collins*, 988 F.2d 1364, 1367 (5th Cir. 1993). Federal habeas corpus relief will not issue to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also present. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996).

Federal habeas corpus relief for state prisoners has been further limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Section 2254(d) provides that an application for a writ of habeas corpus shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. *Williams v. Taylor*, 529 U.S. 362, 402-03 (2000); *see also Childress v. Johnson*, 103 F.3d 1221, 1224-25 (5th Cir. 1997). To obtain habeas corpus relief from a federal court, a state prisoner must show that the state court's ruling on the

claim was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement. *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011). In short, a petitioner must show there was no reasonable basis for the state court to deny relief. *Id.* at 98.

The AEDPA has modified a federal habeas court's role in reviewing state prisoner applications to prevent federal habeas "retrials" and to ensure that state court convictions are given effect to the extent possible under law. *Bell v. Cone*, 535 U.S. 685, 693 (2002). To that end, a federal district court must be deferential to state court findings supported by the record. *See Pondexter v. Dretke*, 346 F.3d 142, 149-152 (5th Cir. 2003). A state court's factual findings "shall be presumed to be correct" unless the petitioner carries "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness also applies to unarticulated findings that are necessary to the state court's conclusions of mixed law and fact. *Valdez v. Cockrell*, 274 F.3d 941, 948 n. 11 (5th Cir. 2001).

A state application that is denied without written order by the Texas Court of Criminal Appeals is an adjudication on the merits. *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) (a "denial" signifies an adjudication on the merits while a "dismissal" means the claim was declined on grounds other than the merits). Further, "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning." *Richter*, 562 U.S. at 98; *see also Pondexter v. Dretke*, 346 F.3d 142, 148 (5th Cir. 2003) ("a federal habeas court is authorized by Section 2254(d) to review only a state court's 'decision,' and not the written opinion explaining that

decision") (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc) (per curiam));

*Evans v. Davis*, 875 F.3d 210, 216 n.4 (5th Cir. 2017) (even where "[t]he state habeas court's

analysis [is] far from thorough," a federal court "may not review [that] decision *de novo* simply

because [it finds the state court's] written opinion 'unsatisfactory'") (quoting *Neal*, 286 F.3d at

246)).

## III.    ANALYSIS

### A.  Prosecutorial Misconduct

#### i.    *Improper arguments*

Bingham argues that his due process rights were violated as the result of prosecutorial

misconduct.  He first argues that the State made improper arguments to the jury.  Doc. 3 at 6.  As

detailed here, that argument lacks merit.

In determining if prosecutorial comments were improper, the relevant question is whether

the prosecutors' comments "so infected the trial with unfairness as to make the resulting

conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974).

"Although the asserted prosecutorial misconduct may have made the defendant's trial less than

'perfect,' that imperfection must have rendered the trial 'unfair' in order to be 'constitutional

error.'" *Rogers v. Lynaugh*, 848 F.2d 606, 609 (5th Cir. 1988) (citing *Darden* at 183, n. 15).

"The test applied to determine whether a trial error makes a trial fundamentally unfair is whether

there is a reasonable probability that the verdict might have been different had the trial been

properly conducted." *Kilpatrick v. Blackburn*, 777 F.2d 272, 279 (5th Cir. 1985) (footnote

omitted).

In Texas, the proper scope of jury argument is: (1) summation of the evidence; (2) any reasonable deduction from the evidence; (3) an answer to the argument of opposing counsel; and (4) pleas for law enforcement. *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000).

Here, Bingham complains that, during closing arguments, the State referred to the jury as the "conscience of the community." Doc. 3 at 6. More specifically, the State argued:

> And from Officer Collier's video, you have an even better vantage point of the defendant and him walking, and you see him stagger and stumble in that grassy area with the officer standing nearby. And you get to ask yourself, when he is walking in that direction, do you believe that he was headed towards the MINI Cooper to render assistance to the victims of the crime scene that he just created, or do you think he was trying to walk away, to distance himself from that crime scene? You get to decide in light of all the evidence that you've seen and the testimony that you heard today what you believe happened that night. You are the conscience of the community.

Doc. 24-10 at 23. Bingham argues that the argument is improper because it implies that the community expects a certain punishment. Doc. 27 at 6. However, while arguments that the community expects, demands, or desires a particular punishment are improper, "a prosecutor may address the jurors as representatives, spokesmen, and even the conscience of the community." *Barcenes v. State*, 940 S.W.2d 739, 749 (Tex. App.—San Antonio 1997, pet. ref'd) (citing *Cortez v. State*, 683 S.W.2d 419, 420 (Tex. Crim. App. 1984); *Whittington v. State*, 580 S.W.2d 845, 847 (Tex. Crim. App. [Panel Op.] 1979). Indeed, a number of state and federal courts have rejected claims that arguments referring to the jury as the "conscience of the community," or using similar language is improper. *See, e.g., Caballero v. State*, 919 S.W.2d 919, 924 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd) (deeming proper the argument, "jurors are sick and tired of this. Jurors are tired of crime because jurors such as yourself are members of the community you represent. You represent the community"); *Jackson v. Johnson*, 194 F.3d 641, 655 (5th Cir. 1999) (rejecting improper-jury-argument claim of state habeas

petitioner, and noting that "[a]lthough the prosecution may not appeal to the jury's passions and prejudices, the prosecution may appeal to the jury to act as the conscience of the community").

Based on the foregoing, the Court concludes here that the State's reference to the jury as the "conscience of the community" was not improper. And as is important to the relief sought by Bingham, the state court's rejection of his argument on this issue did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. *See* 28 U.S.C. § 2254(d)(1).

Next, Bingham takes issue with the prosecution stating, in response to a tape-recorded jail call that Bingham had with his wife following the accident, "[y]ou heard for yourself…[y]ou hear any remorse in there?" Doc. 3 at 6. However, "while commenting upon a defendant's failure to show remorse during trial of the case is tantamount to a comment on his failure to testify when the record fails to reflect evidence of the defendant's actions during that trial[,]…if…evidence contained in the record supports the comment then no error is shown." *Davis v. State*, 782 S.W.2d 211, 222-23 (Tex. Crim. App. 1989), *cert denied*, 495 U.S. 940 (1990) (citations omitted)). In Bingham's case, the State was merely referencing the alleged lack of remorse in Bingham's recorded jail call. *See* Doc. 24-11 at 21-22. Thus, the State's argument was connected to evidence in the record and not an improper comment upon Bingham's failure to testify. For these reasons, Bingham's argument fails.

### ii.    *Due Process—improper burden shifting*

Bingham also complains that the State improperly shifted the burden of proof to the

defense regarding the results of a forensic blood kit test conducted after the incident.[1] Doc. 3 at 6. Specifically, the State argued:

> This other blood kit the defense counsel wants to mention to you, the first blood kit at DPS, how he has subpoena power, how the defendant has subpoena power. He does, you heard that in *voir dire*. That's nothing new. But you know good and well if there was something good there, if there was something to show that he was not intoxicated…[defense objection]…But the burden rests with the State. We gladly accept that responsibility. But once again, they also do have subpoena power. And if there was anything good in there for Bruce Bingham, you would have heard it.

Doc. 23-1 at 5-6. Bingham argues that this reference to his ability pursuant to his subpoena power to obtain the results of the blood kit improperly shifted the burden to him to rebut the State's case. Doc. 27 at 8. The State counters that the argument properly falls within the category of "an answer to the argument of opposing counsel[,]" *Wesbrook*, 29 S.W.3d at 115, and the Court agrees. *See* Doc. 23 at 13.

The record reveals that Bingham's counsel initially brought up the whereabouts of this blood kit:

> Kit No. 1, what happened to it? Don't you think it's important to know what happened with that blood evidence because we know, even though they—some people try to say they didn't know what happened to it. Eventually it got out. Eventually they had to tell the truth that that kit was sent off five days after the fact to DPS, the Department of Public Safety, a State agency, not a Dallas County lab, but a State lab for testing. That was five days after.
>
> On jury selection, you know, we talked about that, how it's important for things that are to be tested or evidence to be then closer to the time that they were taken or collected. Okay? But why—why didn't that happen?

---

[1] According to Bingham's appellate counsel, "[f]our vials of blood were taken from [Bingham] that night, a hospital draw ordered by the doctors at 11:22 p.m., within an hour after the accident, and the forensic draw pursuant to a search warrant at 2:10 a.m. the next morning." Doc. 23 at 4. The hospital draw showed Bingham's blood alcohol content in the range of .20 to .22, while the forensic draw showed a blood alcohol content of .154. *Id.* at 5.

Doc. 23-1 at 12.  Thus, the State's argument apparently was in response to the Defense's attempt to create doubt concerning he blood kit in question.  In reply, Bingham argues that his counsel never argued that the blood kit in question would have shown that he was not intoxicated, "he was simply placing into the minds of the jurors information that would suggest that there were some improprieties regarding the blood draw testing processing." Doc. 27 at 9.  Nevertheless, the State's argument still was in response to the Defense's argument and therefore appropriate.  Further, the State acknowledged during its argument that it had the ultimate burden of proof.  Doc. 23-1 at 5-6.  In any event, Bingham cites no clearly established federal law prohibiting such argument in the context it was made.  Thus, the state court's determination that the argument did not amount to a due process violation but instead was a permissible form of argument was neither contrary to, nor involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

### B.    Ineffective Assistance of Counsel ("IAC")

Relatedly, Bingham claims that his attorney was ineffective for (1) failing to object to the prosecution's argument that the jury was the "conscience of the community"; (2) failing to object to the argument that Bingham showed no remorse during the recorded jail call; and (3) failing to have the hospital's blood draw independently tested.  Doc. 3 at 7.

To establish ineffective assistance of trial counsel, a petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To establish deficient performance, a petitioner must show that his attorney's actions "fell below an objective standard of reasonableness." *Id.* at 688.  In evaluating an attorney's performance, there is a "strong presumption that counsel's conduct

falls within the wide range of reasonable professional assistance," or that "under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689.

Under *Strickland's* prejudice prong, a petitioner must also demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*; *see also Harrington v. Richter*, 562 U.S. 86, 112 (2011) ("The likelihood of a different result must be substantial, not just conceivable."). A petitioner must "affirmatively prove, not just allege, prejudice." *Id.* at 693. If the petitioner fails to prove the prejudice component, the court need not address the question of counsel's performance. *Id.* at 691.

Additionally, the Court reviews claims of ineffective assistance of counsel under a "doubly deferential" standard, taking "a 'highly deferential' look at counsel's performance, [under *Strickland v. Washington*, 466 U.S. 668, 689 (1984)], through the 'deferential lens of § 2254(d).'" *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011) (citations omitted). Considering the deference afforded by Section 2254(d)(1), "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. at 101.

### i.   *Failure to Object*

Bingham complains that his counsel did not object to the State's reference to the jury as the "conscience of the community," or the State's argument that Bingham showed no remorse during the recorded jail call. Doc. 3 at 7. As previously discussed, however, neither of those arguments was impermissible under the facts here. Consequently, there was no meritorious basis for objection. It is manifest that counsel is not ineffective for failing to make baseless objections. *See Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998) (noting that the failure to make a

frivolous objection does not cause counsel's performance to fall below an objective level of reasonableness) (citing *Sones v. Hargett*, 61 F.3d 410, 415 n. 5 (5th Cir. 1995)).  Thus, the state court did not unreasonably apply *Strickland* in rejecting the argument that Bingham's counsel was deficient for failing to make meritless objections, and this IAC claim is without merit.

### ii. *Failure to Seek Independent Blood Analysis*

Bingham argues that his counsel was constitutionally ineffective for failing to seek an independent analysis of the blood that the hospital collected following the incident.  Doc. 3 at 7. He asserts that in many cases, the testing results and analysis from labs such as "DPS, Genescreen, SWIFTS and HPD ("HCFSC")" have been called into question.  Doc. 27 at 16.

"[C]ounsel has a duty to make a reasonable investigation of defendant's case or to make a reasonable decision that a particular investigation is unnecessary." *Ransom v. Johnson*, 126 F.3d 716, 723 (5th Cir. 1997) (citing *Strickland*, 466 U.S. at 691).  "A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989).

Here, Bingham fails to demonstrate what additional testing would have uncovered, or that the outcome of the trial would have been different had his counsel sought independent blood analysis.  He admits in his reply brief (somewhat paradoxically in the context of claiming that it is reasonably probable that independent testing would have changed the outcome), that "[n]o one knows what would have come out of retesting, and no one can properly speculate on that, because it was not done." Doc. 27 at 17.  The Court agrees.  Consequently, Bingham has failed to show, by a reasonable probability, that the outcome of the trial would have been different had the additional testing been conducted.  A such, he also fails to demonstrate that the state court

unreasonably applied *Strickland*, and his IAC claim premised upon the failure of his counsel to seek additional blood testing was properly rejected by the state court.

### D.     Failure to Disclose Jail Call

Bingham also claims that his constitutional rights were violated by the State's failure to disclose the recorded jail call in which Bingham discussed the circumstances of the crime with his wife.  Doc. 4 at 18-21.

Bingham insists in his reply brief that he is not claiming a *Brady* violation.  He contends that his claim is instead premised upon "a constructive denial of counsel at the punishment phase" when the State "failed to disclose the jailhouse phone call that was played to the jury." Doc. 27 at 5.  More specifically, Bingham argues that the defense was unable to mount a defense as to the jail call by, for example, explaining the context in which the call was made or explaining that Bingham may have sounded unremorseful because the call was made while Bingham was still intoxicated and before he knew that the victim had died.  Doc. 27 at 19. Bingham argues that this constructive-denial-of-counsel claim is based upon Supreme Court precedent, including *Penson v. Ohio*, 488 U.S. 75 (1988), *Mickens v. Taylor*, 535 U.S. 162 (2002), and *Cone v. Bell*, 556 U.S. 449, 469 (2009).  *See* Doc. 27 at 18-19.

Bingham's argument lacks merit.  None of the cases he cites stand for the proposition that the State's alleged failure to disclose evidence could be repackaged into a constructive-denial-of-counsel claim.  Indeed, the Court has found no authority supporting such an argument.  Instead, the Court of Appeals for the Fifth Circuit has found constructive-denial-of-counsel claims "in cases involving the absence of counsel from the courtroom, conflicts of interest between defense counsel and the defendant, and official interference with the defense…."  *Gochicoa v. Johnson*, 238 F.3d 278, 284 (5th Cir. 2000).  Further, the Fifth Circuit has remarked that "constructive

denial will be found when counsel fails to subject the prosecution's case to any meaningful adversarial testing." *Id.* (citation omitted). As the facts underlying Bingham's constructive-denial-of-counsel claim does not place it in any of the above-mentioned categories, the state court did not err in rejecting it. In any event, the state court's decision was neither contrary to, nor involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

Nevertheless, construing Bingham's claim as one arising under *Brady v. Maryland,* 373 U.S. 83 (1963), it still fails. To establish a *Brady* violation, Bingham must show that (1) the prosecution actually suppressed evidence, (2) the suppressed evidence was favorable to him, and (3) the suppressed evidence is material. *See Kyles v. Whitley,* 514 U.S. 419, 433-34 (1995); *see also Strickler v. Greene,* 527 U.S. 263, 281-82 (1999). "Evidence is considered material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Dennes v. Davis,* 797 F. App'x 835, 841-42 (quoting *United States v. Bagley,* 473 U.S. 667, 682 (1985)). "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id.*; *see also United States v. Sipe,* 388 F.3d 471, 485 (5th Cir. 2004). If, however the suppressed evidence was discoverable through due diligence, a petitioner's *Brady* claim necessarily fails. *United States v. Brown,* 650 F.3d 581, 588 (5th Cir. 2011), *cert denied,* 566 U.S. 970 (2012).

The Court agrees with the State that Bingham's *Brady* claim—to the extent asserted—is meritless. First, Bingham has not shown that the State suppressed the jail call. In fact, the evidence appears to show that Bingham should have known about it. On May 2, 2015—two years prior to trial—the prosecution provided a witness list, which included the witness (Eric Moody of Securus Technologies) whose sole function was to authenticate the phone call. *See*

12

Doc. 23-1 at 18.[2]  Additionally, the phone system in the jail notified Bingham at the time of the call that his call was "subject to recording and monitoring."  Doc. 23-1 at 24.  Bingham also did not raise a *Brady* violation when the jail call was introduced (which would have been frivolous for the reasons stated here), he only objected to improper authentication.  Doc. 23-1 at 24.  And fundamentally, Bingham has failed to show how the phone call was favorable to him.

For the foregoing reasons, Bingham cannot establish that the state court's denial of this claim was a decision that was contrary to, or involved an unreasonable application of, clearly established law, as determined by the Supreme Court of the United States.  *See* 28 U.S.C. § 2254(d)(1).

### E.  Request for an Evidentiary Hearing

In his reply brief, Bingham appears to request an evidentiary hearing.  He argues that he was denied a fair habeas proceeding in the state court because the habeas court did not address the factual issues in his application by, for example, expanding the record through a trial-counsel affidavit.  *See* Doc. 27 at 20.  However, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011); *see also Blue v. Thaler*, 665 F.3d 647, 656 (5th Cir. 2011) (noting that "[t]he same rule necessarily applies to a federal court's review of purely factual determinations under § 2254(d)(2), as all nine Justices acknowledged" in *Pinholster*).  Here, as in *Pinholster*,

---

[2] Bingham argues that the State's disclosure of Eric Moody failed to comply with Texas Code of Criminal Procedure article 37.07 Sec. 3(g). Doc. 27 at 10.  But that section concerns the requisite notice that the State must give to introduce other crimes evidence—not witnesses.  At any rate, "[f]ederal habeas courts lack the power to correct errors in the application of state law or reconsider whether a state court improperly applied its own procedure." *Masterson v. Thaler*, Civil Action No. 4:09-CV-2731, 2014 WL 808165, at *28 (S.D. Tex. Feb. 28, 2014) (citing *Smith v. Johnson*, 216 F.3d 521, 523 (5th Cir. 2000)).

Bingham's habeas petition concerns only claims under Section 2254(d)(1) that were adjudicated

on the merits in state court.  As discussed above, Bingham cannot overcome the limitation of

Section 2254(d)(1) on the record that was before the state court.  Therefore, Bingham is not

entitled to an evidentiary hearing.

## IV.    CONCLUSION

For the foregoing reasons, Bingham's habeas corpus petition should be **DENIED**, and

this case should be **DIMMISSED WITH PREJUDICE.**

**SO RECOMMENDED** on April 14, 2021.


RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE


### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).  An objection must identify the finding or recommendation to which objection is made, the basis for the objection, and the place in the magistrate judge's report and recommendation the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute,* 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).